UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | CAUSE NO.: 1:13-CR-62-TLS |
| | ) | |
| JOSHUA R. MACKIN | ) | |

**OPINION AND ORDER**

The Defendant, Joshua R. Mackin, is charged with being a felon in possession of a firearm, a violation of 18 U.S.C. § 922(g)(1). The charge stems from a search incident to an arrest. Although police had an arrest warrant for the Defendant, and were acting on that warrant when they arrested him, he maintains that the seizure was unlawful because they did not have sufficient confirmation of his identity prior to seizing him. Finding no Fourth Amendment violation, the Court denies the Defendant's Motion to Suppress Tangible Evidence and Statements [ECF No. 107].

**BACKGROUND**

On November 24, 2015, the Defendant filed a Motion to Suppress Tangible Evidence and Statements arguing for the suppression of items police seized from him during an arrest, and the suppression of statements he made to police during or after his arrest. In response, the Government provided the arrest warrant the police relied upon to make the arrest, which was followed by a search incident to arrest. The Government maintained that no evidentiary hearing was necessary to resolve the Motion. The Defendant did not respond to the Government's assertions. The Court agreed with the Government's assertions, and found in its January 14, 2016, Order [ECF No. 11], that no evidentiary hearing was necessary to deny the Motion

because the allegations and moving papers were not "sufficiently definite, specific, non-conjectural and detailed enough to conclude that a substantial claim is presented and that there are disputed issues of material fact which will affect the outcome of the motion.'" *United States v. McGaughy*, 485 F.3d 965, 969 (7th Cir. 2007) (quoting *United States v. Villegas*, 388 F.3d 317, 324 (7th Cir. 2004)).

After that ruling, the Defendant filed a Motion to Reconsider Defendant's Motion to Suppress [ECF No. 112]. The Defendant submitted that he raised a "factual issue as to the 'identity' of the person to be detained, seized, and searched and later identified as the Defendant." (Mot. ¶ 2.) He maintained that, despite the arrest warrant, there was no basis to arrest him because "he was simply 'an individual' who left a residence . . . without previously being identified as the individual in the arrest warrant." (*Id.* ¶ 4.) The Court granted the Motion for Reconsideration, re-established the Motion to Suppress as a pending motion, and held an evidentiary hearing on August 4, 2016. The Defendant was present and represented by attorney Richard Thonert. The Government was represented by Assistant United States Attorneys Lovita Morris King and Lesley Miller Lowery. Fort Wayne Police Department Officer Treven Brown testified. At the conclusion of the hearing, the Court took the Motion under advisement and gave the parties additional time to file briefs.

## FINDINGS OF FACT

After considering the evidence submitted at the hearing and the credibility of the witness, the Court makes the following findings of fact:

On July 12, 2013, a warrant was issued for the Defendant's arrest. On August 2, 2014,

2

Officer Brown responded to a 7:33 p.m. dispatch pertaining to this warrant. Dispatch advised that the Defendant was at a specific address on DeWald Street. The information about the Defendant's location at the DeWald Street residence had been relayed to police by an individual who provided his or her name, and described a silver SUV associated with the Defendant. At around 7:45 p.m., Officer Brown used the computer in his squad car to check the Spillman database for the Defendant's information. The database confirmed that the Defendant had an active warrant for his arrest for a probation violation and revocation. Officer Brown also viewed a full screen color photograph of the Defendant, along with a description of his stature and other identifying information.

When Officer Brown arrived at the DeWalt Street residence, he saw a silver SUV parked in front of the home with three female passengers inside. The front passenger door had been left open, extended toward the front of the home. A second SUV was parked in the rear of the home. Because Officer Brown was the only officer at the residence, and because he was aware from the Spillman database that safety alerts had been issued advising officers to use extra caution in encounters with the Defendant, he parked two to three houses away from the rear of the residence and waited for an additional officer to arrive.

Fort Wayne Police Department Officer Alexander Ramon arrived at the residence around 7:50 p.m. Officer Brown was outside his vehicle and saw Officer Ramon arrive. Officer Brown used radio to communicate his location to Officer Ramon and then began to approach the second SUV, which was parked less than 50 feet from the back of the house. Officer Ramon parked his squad car in front of the house. As Officer Brown saw Officer Ramon walk across the street toward the front door, a man quickly exited the rear of the home leaving the back door open. The

man repeatedly turned to look back at the door as he ran toward Officer Brown's location. Officer Brown was able to see the person, including his face, and "immediately recognized him as Mr. Mackin." (Evidentiary Hearing Tr. 76, ECF No. 150; *see also id.* at 90 (testifying that he recognized the Defendant by his face).) Officer Brown testified that he was able to recognize the Defendant from prior involvement with him and from viewing the Spillman photograph about twenty minutes earlier.

The Defendant did not appear to notice Officer Brown until Officer Brown identified himself as police and ordered the Defendant to stop. The Defendant was within fifteen feet of Officer Brown by this time. Because the Defendant continued to turn away and "was slow to comply," Officer Brown drew his Taser and pointed it at the Defendant. (Evidentiary Hearing Tr. 78.) Officer Brown notified Officer Ramon by radio, who then joined them in the back of the house and assisted Officer Brown in taking the Defendant into custody. During a search of the Defendant, they found a handgun in the Defendant's right pants pocket.

**ANALYSIS**

The Fourth Amendment of the United States Constitution guarantees the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. "[T]he Fourth Amendment affords persons who are arrested the . . . distinct right to a judicial determination of probable cause 'as a prerequisite to extended restraint of liberty following arrest.'" *Lopez v. City of Chi.*, 464 F.3d 711, 718 (7th Cir. 2006) (quoting *Gerstein v. Pugh*, 420 U.S. 103, 114 (1975)). An arrest warrant is such a determination of probable cause. *Id.* An arresting officer may search an arrestee incident to the

arrest "in order to find weapons and to search for and seize any evidence on the arrestee's person." *United States v. Thomas*, 512 F.3d 383, 387 (7th Cir. 2008).

It is undisputed that the police had a warrant for the Defendant's arrest. The Defendant does not challenge the validity of the warrant. Instead, the Defendant maintains that his seizure violated the Fourth Amendment because "the Government did not prove that the police could identify the individual coming out the back door of the home and that it turned out being Joshua Mackin after the seizure is not sufficient to justify the seizure." (Br. in Supp. 5, ECF No. 146.) The Defendant does not identify at what point in the mere moments it took for the Defendant to exit the house and for Officer Brown to order him to stop that Officer Brown had to be sure of the Defendant's identity, or what level of certainty was constitutionally required. The Defendant's Memorandum of Law in support of his Motion to Suppress does not contain any case citations related to the issue of identification. The majority of the Defendant's analysis relates to the issue of whether the police were required to obtain a second warrant—a search warrant—to enter the residence where they believed the Defendant was located. That issue was the subject of a separate motion to suppress and separate briefing. Accordingly, the Court does not address it here. With respect to the issue of identification, the Court finds that the Defendant's Motion is without merit.

The arrest warrant gave the police a basis for arresting the Defendant, Joshua Mackin. That is what they did. Even in situations where the police execute an arrest warrant on the *wrong* person, there is no violation of the Fourth Amendment if they acted reasonably under the circumstances. *See Hill v. California*, 401 U.S. 797 (1971). "[S]ufficient probability, not certainty, is the touchstone of reasonableness under the Fourth Amendment." *Id.* at 804. "Often,

5

there will have been more than an officer could have done to confirm a suspect's identity. This will not render an arrest unconstitutional so long as the officer's actions were reasonable under the circumstances." *Catlin v. City of Wheaton*, 574 F.3d 361, 366 (7th Cir. 2009) (involving arrest of the wrong person).

Thus, even if the Court looked beyond the fact that the warrant provided Officer Brown with probable cause to arrest the Defendant, the circumstances show that Officer Brown acted reasonably under the circumstances in thinking that the Defendant was the same person who was named in the arrest warrant, and proceeding to arrest him. He responded to the specific address where someone had, less than twenty minutes before, advised that the Defendant was located. Officer Brown had previous involvement with the Defendant and reviewed a full page color photograph of the Defendant before exiting his car and waiting for additional law enforcement to arrive. When Officer Ramon arrived and headed toward the front door, a man inside the house quickly exited the back door, looking periodically backwards at the door as he ran. It was reasonable to believe, based on the circumstances, that the quickly departing person was trying to evade the police officer who was coming to the front door. Given the information Officer Brown already had, it was also reasonable to believe that this person might be the Defendant. Officer Brown was less than fifty feet away, and the gap closed to within fifteen feet by the time Officer Brown called out the order for the Defendant to stop. Officer Brown provided clear, believable testimony that he, in fact, immediately recognized the man as the Defendant. Regarding the identification, Officer Brown testified:

> Q. Was there any question in your mind that the defendant was the same defendant that had an active arrest warrant?
> A. No.
> Q. Any question in your mind whether the individual who you saw exit the

> rear of the residence was the same individual depicted [in the Spillman photograph]?
>
> A. There's no question.

(Evidentiary Hearing Tr. 78.)

Officer Brown's testimony was not improbable or inconsistent. Nothing about the situation suggests that Officer Brown did not have a reasonable opportunity to recognize the Defendant, or that he acted unreasonably when he seized him. The Defendant's Brief suggests that poor lighting was an issue. However, Officer Brown testified that it was still daylight. Sunset on August 2, 2014, was at 8:56 p.m., well before Officer Brown first saw the Defendant leave the back door of the residence around 7:50 p.m. *See* Sunrise, Sunset, and Daylength, August 2015, https://www.timeanddate.com/sun/usa/fort-wayne?month=8&year=2014 (last visited Nov. 3, 2016); Sunrise/Sunset Times, http://www.calendar-updates.com/sun.asp?PostalCode=46835&Submit=Get+Sunrise+%2F+Sunset+Times (last visited Nov. 3, 2016). In an attempt to discredit Officer Brown, the Defendant seizes on testimony from the Defendant's first trial. The Defendant maintains that during the trial, Officer Brown testified that he informed Officer Ramon and dispatch that he had "one person" at the back of the house. He asserts that Officer Brown did not testify that he "immediately recognized that person as Mackin." (Resp. 3, ECF No. 149.) There was no, as the Defendant argues, contradiction in Officer Brown's versions. In fact, the Court's review of Officer Brown's trial testimony shows it to be consistent in all material respects. Officer Brown testified to the series of events leading up to the Defendant exiting the back door, and stated, "As soon as I saw Officer Ramon get near the sidewalk, almost to the front of the house, the back door opened and Mr. Mackin came out of the back door of the

house." (Trial Tr. 146–47, ECF No. 81.)

Because the arrest was proper, so too was the search incident to the arrest. The Defendant has not presented a claim warranting the suppression of the evidence discovered during the search, or the statements he made to police thereafter.

**CONCLUSION**

For the reasons stated above, the Court DENIES the Defendant's Motion to Suppress Tangible Evidence and Statements [ECF No. 107].

SO ORDERED on November 14, 2016.

                                s/ Theresa L. Springmann
                               THERESA L. SPRINGMANN
                               UNITED STATES DISTRICT COURT